IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Kurtis M. Baily, | ) | |
| | ) | 16 CV 07548 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| Bernzomatic, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion [368] to file a supplemental exhibit is denied. Attorney Shalaby's motion [365] to file a surreply is granted and the surreply [365-1] is deemed filed. Attorney Shalaby's motion [387] requesting confirmation that the requirement for local counsel for plaintiff to sign all filings made on behalf of plaintiff does not apply to documents filed concerning Attorney Shalaby's PHV admission is granted. Attorney Shalaby's motion [401] for leave to file supplemental documents and a related request to take judicial notice is denied. Attorney Shalaby's pro hac vice admission in this case is revoked. Defendants' objection [343] to Magistrate Judge Johnston's order [333] is denied as moot. The court requests Magistrate Judge Johnston schedule a status conference with attorneys Chen and Nelson and defense counsel as soon as possible.

## STATEMENT-OPINION

In its order [382] of September 4, 2018 ("2018 Show Cause Order"), the court ordered Attorney Shalaby to show cause why he should not have his pro hac vice ("PHV") admission revoked or be otherwise sanctioned for certain conduct which arose after Magistrate Judge

Johnston's entry of an order [333] on defendants' motion to revoke Attorney Shalaby's pro hac vice admission and the filing of objections thereto. Mr. Shalaby filed a response [384] to the 2018 Show Cause Order on September 12, 2018. He also filed his declaration requesting judicial notice of appellate brief [385] on September 14, 2018. Thereafter, he filed: a supplemental response "further addressing matter of Magistrate Judge Johnston" [386] on September 15, 2018, a second supplemental response re "Judge Efremsky's order of September 17, 2018 [389] on September 17, 2018, his declaration requesting judicial notice of BAP appellate brief [390] on September 18, 2018, a declaration requesting judicial notice of variance in electronic signature procedures of the federal courts' civil and bankruptcy divisions [391] on October 12, 2018, an image from Bloomberg.com of Magistrate Judge Johnston's profile [398] on November 5, 2018, and a motion for leave to file supplemental documents which included a request for judicial notice [401] on December 28, 2018.[1]

The 2018 Show Cause Order specifically ordered Attorney Shalaby to address the following:

---

[1]  Attorney Shalaby also filed a motion [387] requesting confirmation that the requirement for local counsel for plaintiff to sign all filings made on behalf of plaintiff does not apply to documents filed concerning Attorney Shalaby's PHV admission.  This motion is granted. Attorney Shalaby also has a motion [365] pending to file a surreply which is granted. The surreply [365-1] is deemed filed. Defendants have a motion [368] pending to file a supplemental exhibit. The exhibit is a copy of a document filed by Attorney Shalaby in Peralta v. Bernzomatic, 17cv3195-JJT as docket number 82 in that case. The proposed exhibit is a public record, which the court has already referenced in a previous order, and need not be filed as an exhibit here to be considered. Accordingly, the motion [368] to file the supplemental exhibit is denied.

1) His repeated misstatements of the content of Judge Efremsky's order entered May 8, 2018 ("May 8th Order").

2) His repeated false statements that Magistrate Judge Johnston was employed by Holland & Knight at the time Holland & Knight attorneys were representing the defendants in Attorney Shalaby's personal litigation against them and that Magistrate Judge Johnston refused to disqualify himself in the current case though such disqualification was mandated by 28 U.S.C. § 455(b)(2) due to that employment.

3) His statement in his general bar application that he believed the State Bar of California only made an inquiry rather than conducted an investigation of him when previously in this case he referred to the state bar matter as an investigation and his request for judicial notice to the 9th Circuit and the documents attached thereto indicate the matter was an investigation.

As discussed in the 2018 Show Cause Order, United States Bankruptcy Judge Efremsky had imposed sanctions on Attorney Shalaby in In re Nakhuda, No. 14-41156-RLE, 2015 WL 1943450 (Bankr. N.D. Cal. 2015). These sanctions included (1) a monetary penalty imposed pursuant to Fed. R. Bankr. P. 9011 of $8,000; (2) a suspension imposed pursuant to Fed. R. Bankr. P. 9011 from the practice of law in the bankruptcy courts of the Northern District of California until he completed 24 hours of continuing legal education in bankruptcy law plus 3 hours of continuing legal education in ethics ("CLE Provision"); and (3) a suspension pursuant to local rule of his e-filing privileges until he completed ECF retraining ("ECF Provision"). Judge Efremsky also ordered disgorgement of attorney's fees based on 11 U.S.C. § 329. On appeal to the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), the fee disgorgement and the suspension imposed

by the ECF Provision were affirmed, the monetary penalty imposed pursuant to Fed. R. Bankr. P. 9011 was explicitly reversed and the CLE Provision (also imposed pursuant to Fed. R. Bankr. P. 9011), though not directly addressed, appears to have been implicitly reversed. In re Nakhuda, 544 B.R. 886 (B.A.P. 9th Cir. 2016). The BAP decision subsequently was affirmed by the Ninth Circuit Court of Appeals. In re Nakhuda, 703 Fed. Appx. 621 (9th Cir. 2017). In affirming the BAP's decision concerning the suspension imposed by the ECF Provision the Ninth Circuit stated:

> "The BAP properly concluded that the bankruptcy court did not abuse its discretion when it suspended Shalaby's electronic case filing privileges until he had undergone electronic case filing training by the clerk's office. The local rules of the United States Bankruptcy Court for the Northern District of California give the bankruptcy court the authority to impose sanctions on attorneys practicing before it for failure to comply with the court's local rules. Bankr. N.D. Cal. R. 9011-1. The local rules further provide that when an electronically filed document requires the signature of a third party, such as a debtor, the document must contain the original ink signature of the third party or a copy of the original ink signature. Bankr. N.D. Cal. R. 5005-2(d).
>
> The record supports the bankruptcy court's finding that Shalaby's continued failure to obtain the debtor's original ink signature on documents electronically filed with the court violated the local rules. The error was brought to Shalaby's attention, yet he continued to violate the rules."

In re Nakhuda, 703 Fed. Appx. 621, 622 (9th Cir. 2017).

Attorney Shalaby filed a petition for rehearing with the Ninth Circuit (Dkt. No. 27-1 in Case No. 16-60017) in which he asserted the Ninth Circuit erred when it stated in its decision that Attorney Shalaby's "failure to obtain the debtor's original ink signature on documents electronically filed" "was brought to Shalaby's attention, yet he continued to violate the rules." He argued "[t]here was no allegation anywhere in the record stating or suggesting that the error was brought to Shalaby's attention, yet he continued to violate the rules." His petition for

rehearing was denied by the Ninth Circuit on November 30, 2017 and the mandate issued on December 14, 2017. Dkt. Nos. 28, 29 in Case No. 16-60017.

On April 14, 2018, Attorney Shalaby filed a "Motion to Amend Pre-Appeal Sanction and Suspension Order with Judge Efremsky. Judge Efremsky's May 8th Order is the ruling on that motion.

In the 2018 Show Cause Order, this court noted Attorney Shalaby had requested [346] that this court take judicial notice of the May 8th Order entered by Judge Efremsky. In this request Attorney Shalaby stated: "In this brief I am requesting only that the Court take judicial notice of the relevant Judge's statement based on his personal knowledge, the Ninth Circuit declined to reverse the 'moot' suspension portion of the subject order by way of a 'clear error' in the record, which is presented below." He further stated: "On that order he [Judge Efremsky] confirms the error of the Ninth Circuit, based on his 'personal knowledge,' which I have already disclosed to the Court." Attorney Shalaby quoted paragraph 16 of the May 8th Order as making clear Judge Efremsky's "'personal knowledge' of this error" made by the Ninth Circuit.[2]

In the 2018 Show Cause Order, this court found that these statements by Attorney Shalaby were a gross misstatement of Judge Efremsky's May 8th Order because "[p]aragraph number 16 of the [May 8th Order] quoted above by Attorney Shalaby is not a finding by Judge Efremsky that his personal knowledge confirms the alleged error. Rather, it is merely a recitation

---

[2] Paragraph 16 of the May 8th Order reads as follows: "Like the petition for rehearing before the Ninth Circuit, the Motion to Amend repeats the contention that this statement in the Ninth Circuit Memorandum Decision is factually erroneous as Mr. Shalaby's own declaration shows, and as this court's 'personal knowledge' confirms. The Motion to Amend also claims that it 'is not a motion to reverse an appellate decision' but a 'proper Rule 60(b) motion to amend and strike the suspension provisions' on the grounds that 'this mistake is known' to this court."

of Attorney Shalaby's argument on the point. Instead, what Judge Efremsky found was: 'the Ninth Circuit found that the record supported this court's [Judge Efremsky's] finding that there had been repeated violations of the Local Rules regarding obtaining and keeping ink signatures.'"

In his response [384] to the 2018 Show Cause Order, Attorney Shalaby argues he did not misrepresent the content of Judge Efremsky's May 8th Order. He states: "In my view, any interpretation contrary to footnote 2 of Judge Efremsky's order would be incorrect, because his words 'implicitly reversed' express his understanding that the Ninth Circuit's <u>repeat violation allegation</u> is factually incorrect.[3] It is therefore my belief that there can be no other interpretation." (emphasis in original). Attorney Shalaby contends: "This 'implicitly reversed' observation by Judge Efremsky is the statement of his 'personal knowledge' that the Ninth Circuit's <u>repeat violation allegation</u> is factually incorrect and unsupported by the record. Any other interpretation would be impossible because the BAP's decision clearly discloses that Judge Efremsky did not find that I acted 'knowingly or intentionally.'" (emphasis in original) Attorney Shalaby then quotes the BAP opinion which notes the "bankruptcy court did not find Shalaby acted knowingly or intentionally" and states "[i]n sum, the bankruptcy court erred in sanctioning Shalaby for his conduct under Rule 9011 because it applied the wrong legal standard for sua sponte sanctions and its factual findings do not support – and in fact foreclose – the heightened standard of 'akin to contempt'. Accordingly, the court abused its discretion in issuing sanctions

---

[3] Footnote 2 of Judge Efremsky's order stated: "This court's Rule 9011 conclusion was reversed by the BAP. The Rule 9011 sanction included the $8,000 payment to the court and the CLE Provision. The BAP was silent as to the CLE Provision but it was at least implicitly reversed. Mr. Shalaby could have asked the BAP for clarification or to vacate the CLE Provision but the BAP docket does not show that he did." Dkt. No. 325, <u>In re Nakhuda</u>, No. 14-41156- RLE (Bankr. N.D. Cal. May 8, 2018).

under Rule 9011. <u>In re Nakhuda</u>, 544 B.R. 886, 901-902 (B.A.P. 9th Cir. 2016), aff'd, 703 Fed. Appx. 621 (9th Cir. 2017)."

Attorney Shalaby continues: "Furthermore, as the BAP explains in its decision, the imposition of sanctions requires the elements of knowledge and intent. Therefore, the only way the Ninth Circuit could 'affirm' would be upon a finding of knowing and intentional misconduct. The Ninth Circuit makes this finding, in direct contradiction with the BAP decision it was reviewing: 'The error was brought to Shalaby's attention, yet he continued to violate the rules.' <u>In re Nakhuda</u>, 703 Fed. Appx. 621, 622 (9th Cir. 2017). It is therefore beyond dispute that the Ninth Circuit's <u>repeat violation allegation</u> was factually incorrect, and also formed the very basis for its incorrect decision." (emphasis in original)

Attorney Shalaby then cites to the portion of the hearing before Judge Efremsky held November 20, 2014 in which Attorney Shalaby stated that the failure to obtain and keep an original ("wet") signature was "an innocent mistake as to one procedure that has since been corrected that will never happen again." He then states "[t]hese are the facts which are within Judge Efremsky's 'personal knowledge,' which he was trying to advise this Court about on his order. With this information, Judge Efremsky's order should be easier to understand. On paragraph 16, Judge Efremsky identifies his 'personal knowledge' following insertion of the comma: '16. Like the petition for rehearing before the Ninth Circuit, the Motion to Amend repeats the contention that this statement in the Ninth Circuit Memorandum is factually erroneous as Mr. Shalaby shows, and as this court's 'personal knowledge' confirms.'"

Attorney Shalaby concludes this portion of his response as follows: "The Court should not impose sanctions for the same reason sanctions were reversed by the BAP, namely there was

no knowing and intentional misconduct on my part. Whether I am correct in my interpretation of Judge Efremsky's order or not, the record and appellate record themselves prove substantively that I am correct in representing to this Court that the Ninth Circuit's <u>repeat violation allegation</u> is factually incorrect, and that Judge Efremsky himself recognizes that the CLE provision based on the Ninth Circuit's erroneous <u>repeat violation allegation</u> was 'at least implicitly reversed.'"

On September 17, 2018, in response to a motion by Attorney Shalaby to amend sanctions order directed to Judge Efremsky in the <u>Nakhuda</u> bankruptcy case, Judge Efremsky entered an order ("September 17th Order") denying the requested relief.[4] In the September 17th Order, Judge Efremsky states:

> "This court now states in the clearest terms possible that Mr. Shalaby's interpretation of the May 8 Order is a gross misstatement of the May 8 Order. To the extent it needs repeating, the Ninth Circuit stated that the record supported this court's finding that there had been repeated violations of the Local Rules regarding obtaining and keeping ink signatures, that this error was brought to Mr. Shalaby's attention, yet he continued to violate the Local Rules. Further, the Ninth Circuit stated that suspending Mr. Shalaby's filing privileges until he received training was an appropriate exercise of this court's discretion."

A footnote (n. 3), in the September 17th Order, states:

> "The trustee's appellee brief explained the underlying facts and his excerpts of the record substantiated them. *Ninth Cir. Dkt. No. 11, p. 25-27*. Beyond doubt, the record showed that Mr. Shalaby was aware in June 2014 that he had consistently violated the Local Rules regarding signatures and it was not until some six months later that he even began to correct his shoddy practices in this case. The court does not know if he corrected his mistakes in any of the other bankruptcy cases in which he is counsel."

Along with filing the September 17th Order here, Attorney Shalaby filed a second supplemental response [389] addressing the September 17th Order. In it he states:

---

[4] A copy of the September 17th Order was filed by Attorney Shalaby in this case as Dkt No. 389-1.

"Judge Efremsky has erred, because Mr. Shalaby did not misinterpret or misstate the May 8 order with respect to what the Ninth Circuit 'stated.' This Court never alleged that Mr. Shalaby was making any misstatement with regard to what the Ninth Circuit Court of Appeals 'stated.' Mr. Shalaby also never alleged that the Ninth Circuit did not make the <u>repeat violation allegation</u>. The issue is whether Judge Efremsky's May 8, 2018 order expressed his personal knowledge that the Ninth Circuit's repeat violation allegation was factually incorrect. Judge Efremsky's 9/17/18 order is unresponsive to this issue because it states only that other individuals (the Ninth Circuit judges and perhaps the trustee) were the ones that made the allegations." (emphasis in original).

The second supplemental response further states:

"The issue is not what the trustee may have stated or implied on his appellate brief. Nor is the issue that 'beyond doubt' Mr. Shalaby had failed to comply with the wet signature requirement until June 2014 (because Mr. Shalaby was unaware that the rule existed). Rather, the issue is whether Judge Efremsky himself made the 'finding' that once the 'wet signature' noncompliance was brought to Mr. Shalaby's attention, he 'continued to violate the rules', because it is this <u>Ninth Circuit's error</u> which is at issue:

> 'The record supports the **bankruptcy court's** finding that
> Shalaby's continued failure to obtain the debtor's original ink
> signature on documents electronically filed with the court violated
> the local rules. **The error was brought to Shalaby's attention,
> yet he continued to violate the rules.** (Emphasis added.) <u>In re
> Nakhuda</u>, 703 F. App'x. 621, 622 (9th Cir. 2017).'

Judge Efremsky falls short of stating that he himself made a finding that the 'error was brought to Mr. Shalaby's attention, and yet he continued to violate the rules.' Judge Efremsky's 9/17/18 order does not state he made such a finding. However, the BAP made the actual and correct finding, which is as follows:

> '**The bankruptcy court did not find Shalaby acted knowingly
> or intentionally** [...] (Emphasis added.) In sum, the bankruptcy
> court erred in sanctioning Shalaby for his conduct under Rule 9011
> because it applied the wrong legal standard for sua sponte
> sanctions and its factual findings do not support – and in fact
> foreclose – the heightened standard of 'akin to contempt'.
> Accordingly, the court abused its discretion in issuing sanctions
> under Rule 9011. <u>In re Nakhuda</u>, 544 B.R. 886, 901-902 (B.A.P. 9th
> Cir. 2016), aff'd, 703 F. App'x. 621 (9th Cir. 2017)'

The Ninth Circuit's <u>repeat violation allegation</u> therefore directly contradicts with the true and correct facts which the BAP disclosed on the face of its memorandum of decision, rendering the <u>repeat violation allegation</u> 'clearly erroneous.'"

Attorney Shalaby then asserts in his second supplemental response that Judge Efremsky's statement in footnote 2 of his May 8, 2018 order[5] "unequivocally evidences his 'personal knowledge' that the <u>repeat violation allegation</u> did not occur." Attorney Shalaby states:

> "Judge Efremsky's observation that the CLE provision was 'at least implicitly reversed' was because of the reason the BAP reversed his sanction order. The BAP reversed his sanction order because the elements of 'knowledge and intent' were not found by Judge Efremsky himself. This does mean that it was not possible for the 'error' pertaining to the 'wet signature' rule noncompliance to have been brought to Mr. Shalaby's attention , and 'yet he continued to violate the rules.' In other words, Mr. Shalaby's representation that Judge Efremsky's order reflects his awareness, based on his personal knowledge, that the <u>repeat violation allegation</u> is incorrect, remains accurate."

As the foregoing amply demonstrates, Attorney Shalaby disputes that he misstated the content of Judge Efremsky's May 8th Order. He also disputes Judge Efremsky's September 17th Order in which Judge Efremsky finds Attorney Shalaby misstated the May 8th Order.

Attorney Shalaby persists in claiming that paragraph 16 of the May 8th Order included a finding by Judge Efremsky, based on Judge Efremsky's personal knowledge, that the Ninth Circuit made a factually incorrect statement in its order when it stated (concerning Attorney Shalaby's failure to obtain original ink signatures as required by local rule) that "[t]he error was brought to Shalaby's attention, yet he continued to violate the rules." However, it is obvious that paragraph 16 of the May 8th Order[6] is simply a statement of Attorney Shalaby's argument in his Motion to Amend. Not only is paragraph 16 not a finding by Judge Efremsky that the Ninth Circuit committed this asserted error, but footnote 3 of the May 8th Order is an express statement by Judge Efremsky that the record disproved Attorney Shalaby's contention of error. Paragraph

---

[5] Quoted above in footnote 3.

[6] Quoted above in footnote 2.

13 of the May 8th Order states:

> "The Motion to Amend asks the court to 'strike' the Suspension Provisions from the Sanctions Order. It argues, as did the petition for rehearing, that the Ninth Circuit's factual finding of repeat violations is erroneous because there was no 'continued failure' to obtain signatures in that this failure had occurred only once – in this Nakhuda chapter 7 – and it had been promptly corrected."

A footnote (footnote 3) was inserted by Judge Efremsky after the word "corrected" in the last sentence of paragraph 13. That footnote reads as follows: "The record in this court and the appellate record disprove this." Judge Efremsky's May 8th Order's footnote 3 makes clear he did not agree with Attorney Shalaby that the Ninth Circuit had erred.

Attorney Shalaby contends the May 8th Order's

> "Footnote 3 is not very clear because it does not nexus the word 'this' to a subject, leaving paragraph 13 up to varying interpretations. However, this is remedied by footnote 2. Footnote 2 of Judge Efremsky's order states: This court's Rule 9011 conclusion was reversed by the BAP. The Rule 9011 sanction included the $8,000 payment to the court and the CLE Provision. The BAP was silent as to the CLE Provision but it was at least implicitly reversed.
>
> This 'implicitly reversed' observation by Judge Efremsky is the statement of his 'personal knowledge' that the Ninth Circuit's repeat violation allegation is factually incorrect and unsupported by the record. Any other interpretation would be impossible because the BAP's decision clearly discloses that Judge Efremsky did not find that I act[ed] 'knowingly or intentionally'."

But, there is no possible varying interpretation. The "this" which Judge Efremsky says the record disproves is clearly Attorney Shalaby's Motion to Amend's statement that "the Ninth Circuit's factual finding of repeat violations is erroneous because there was no 'continued failure' to obtain signatures in that this failure had occurred only once – in this Nakhuda chapter 7 – and it had been promptly corrected." Nothing in footnote 2 of the May 8th Order leads to a different conclusion. Footnote 2 deals with the BAP's ruling concerning sanctions imposed by

Judge Efremsky under Fed. R. Bankr. P. 9011. The ECF Provision was not imposed pursuant to Fed. R. Bankr. P. 9011. It was imposed under a local bankruptcy rule. As Judge Efremsky notes in the May 8th Order's footnote 2: "The Rule 9011 sanction included the $8,000 payment to the court and the CLE Provision." The CLE Provision and the ECF Provision were distinct provisions and imposed under the authority of separate rules. The CLE Provision (which Judge Efremsky believed was at least implicitly reversed) was imposed under Fed. R. Bankr. P. 9011. The ECF Provision (which was specifically upheld by the BAP) was imposed under the bankruptcy court's local rules. It was in its consideration of the sanctions entered under Rule 9011 that the BAP noted that Judge Efremsky "did not find Shalaby acted knowingly or intentionally, but that at a minimum, his conduct was negligent," In re Nakhuda, 544 B.R. at 901-02, and that Judge Efremsky's findings did not demonstrate Attorney Shalaby's conduct was "akin to contempt." Id. The reversal of the sanctions imposed under Rule 9011 (monetary penalty and CLE Provision) and the factual standard applied by the BAP in analyzing and reversing the imposition of sanctions under Rule 9011 simply has nothing to do with the ECF Provision. Accordingly, Judge Efremsky's footnote 2 in the May 8th Order, has nothing to do with his view of the correctness of the Ninth Circuit's statement concerning the ECF Provision that "[t]he error was brought to Shalaby's attention, yet he continued to violate the rules."

Also, as detailed by this court in the 2018 Show Cause Order, the May 8th Order found, in its law of the case analysis, that the Ninth Circuit's statement was not clearly erroneous. Judge Efremsky stated: "The Ninth Circuit found that the record supported this court's finding that there had been repeated violations of the Local Rules regarding obtaining and keeping ink signatures. This is the law of the case." Judge Efremsky went on to state: "The court has

discretion to depart from the law of the case if (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or a manifest injustice would otherwise result." He then stated "the first three exceptions are absent." Since "the first decision was clearly erroneous" is one of the first three exceptions listed, Judge Efremsky found clear error was absent. Judge Efremsky's finding is the exact opposite of what Attorney Shalaby represented it to be.

The 2018 Show Cause Order also raised Attorney Shalaby's repeated false statements that Magistrate Judge Johnston was employed by Holland & Knight at the time Holland & Knight attorneys were representing the defendants in Attorney Shalaby's personal litigation against them and that Magistrate Judge Johnston refused to disqualify himself in the current case though such disqualification was mandated by 28 U.S.C. § 455(b)(2) due to that employment. These false statements concerning Magistrate Judge Johnston were made by Attorney Shalaby in documents filed March 6, 2018 and April 14, 2018 in <u>Shalaby v. Bernzomatic, et al.</u>, No. 11 cv 68 in the United States District Court for the Southern District of California, on June 12, 2018 and in <u>Peralta v. Bernzomatic</u>, 17 cv 3195-JJT in the United States District Court for Arizona and are set forth in the 2018 Show Cause Order on pages 13-15.

Magistrate Judge Johnston had conducted a hearing on November 14, 2017 on Attorney Shalaby's motions [208] [213] to disqualify Magistrate Judge Johnston pursuant to 28 U.S.C. § 455(b)(2). Magistrate Judge Johnston denied the motions because his employment with Holland & Knight had ended prior to a Holland & Knight attorney entering her appearance in <u>Shalaby v. Bernzomatic</u>.

In his response [384] to the 2018 Show Cause Order, Attorney Shalaby acknowledges that

his statements that Magistrate Judge Johnston was employed by Holland & Knight at the time

Holland & Knight attorneys were representing the defendants in Attorney Shalaby's personal

litigation against them and that Magistrate Judge Johnston refused to disqualify himself in the

current case though such disqualification was mandated by 28 U.S.C. § 455(b)(2) due to that

employment were false. His response states:

> "During the 11/14/17 hearing I was not able to take in and understand Judge
> Johnston's employment date disclosure, and had no memory of the disclosure at
> all until I read this Court's 9/4/18 OSC and downloaded and reviewed the
> transcript.[7] Obviously had I known that Judge Johnston left the HK firm two
> months before it substituted into my San Diego action, I would not have stated
> otherwise on the pleadings referenced by this Court. Instead, I would have stated
> my concerns over the fact that then-attorney Mr. Johnston continued to partner-up
> with Holland & Knight in cases that spanned until about the year 2012, because
> that relationship also requires recusal under 28 U.S.C. § 455(b)(2)."[8]

 He acknowledges he never reviewed the transcript of the hearing on the disqualification

motion until well after making these statements. The statements made in April and June 2018

were made after the doctor's note had been filed in this case (footnote 7 above) stating that any

medications Attorney Shalaby was prescribed would not impair his professional judgment and

the statement made in the March 6, 2018 filing with Judge Battaglia was made the same day the

doctor's note was filed.

Local Rule 83.50 of the United States District Court for the Northern District of Illinois

---

[7] Attorney Shalaby had been dealing with some health issues and accompanying memory loss. The case was stayed [262] February 5, 2018, approximately three months after the 11/14/17 recusal hearing, pending Attorney Shalaby completing certain medical treatment and being released to return to work by his doctor with the doctor also providing a statement that any medications Attorney Shalaby was prescribed would not impair his professional judgment. The required doctor's statement was filed on March 6, 2018.

[8] The "partner-up" issue will be discussed below.

adopts the American Bar Associations Model Rules of Professional Conduct ("Model Rules"). Rule 8.2(a) of the Model Rules provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." Attorney Shalaby's statements clearly were made with reckless disregard as to their truth or falsity. A simple review of the transcript of the hearing would have revealed that Magistrate Judge Johnston had left Holland & Knight prior to its attorney's entry of appearance in Attorney Shalaby's personal action against defendants. The transcript would also have revealed that Magistrate Judge Johnston told Attorney Shalaby how Magistrate Judge Johnston's April 1, 2008 change of law firm could be confirmed by searching his name in the Northern District of Illinois' CM/ECF system and even identified one such case for Attorney Shalaby.

Taking Attorney Shalaby at his word that at the time of the hearing he "was not able to take in and understand Judge Johnston's employment date disclosure, and had no memory of the disclosure" until he downloaded and reviewed the transcript after receiving the 2018 Show Cause Order, this does not excuse his failure to obtain and review the transcript before making the statements several months after the hearing. The facts were clearly presented by Magistrate Johnston on the record at the hearing and easily available to Attorney Shalaby had he bothered to check them. For Attorney Shalaby to say, as he did in 1) docket number 82 in Peralta v. Bernzomatic, 17 cv 3195-JJT in the United States District Court for Arizona that:

> "Magistrate Johnston was a supervising attorney at the same law firm that represented 'Bernzomatic' opposite Mr. Shalaby's action in San Diego years ago, and his employment with the Holland & Knight firm was at exactly the time Mr. Shalaby's case was pending. In fact, the Holland & Knight firm continues to represent the 'non-existent' entity, 'Bernzomatic,' in the San Diego prefiling order

proceedings. This Court therefore knows that Judge Johnston should have recused himself as a matter of law, and refused to do so. Therein is the real 'misconduct'"

and in 2) docket number 95 in <u>Shalaby v. Bernzomatic, et al.</u>, No. 11 cv 68 in the United States

District Court for the Southern District of California that:

"Magistrate Johnston was a supervising attorney at the Holland and Knight law firm during the pendency of my actions. That is the firm before you now that represented Bernzomatic in my proceedings at this Court. As no doubt you are aware, he was required as a matter of law to recuse himself. See 28 U.S.C. § 455(a)(2). M.J. Johnston refused to recuse himself"

and in 3) docket number 97 in the same case that:

"[t]he Magistrate Judge, Hon. Iain Johnston . . . was a supervising attorney at the Holland and Knight law firm during the pendency of *this* action, and that law firm represented and continues to represent Bernzomatic in this action to this day. The Court is probably aware that Magistrate Johnston should have recused himself as a matter of law (mandatory recusal as explained in the pending brief), but he has not done so"

impugned the integrity of Magistrate Judge Johnston with false statements in reckless disregard for the easily discoverable falsity of those statements.

Attorney Shalaby's response argues that Magistrate Judge Johnston still violated 28 U.S.C. § 455(b)(2) by failing to recuse himself because, after he left Holland and Knight, Magistrate Judge Johnston had appeared as co-counsel in some cases with a Holland & Knight attorney, Jack Siegel. Attorney Shalaby argues serving as co-counsel with a Holland & Knight attorney falls within the ambit of the language of 28 U.S.C. § 455(b)(2) which requires disqualification by a judge "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness

concerning it."[9] Attorney Shalaby states: "The Court should not revoke my PHV admission for expressing my concerns and my belief that Hon. Magistrate Johnston was and still is required to recuse himself as a matter of law due to his co-counsel relationship with Holland & Knight. Sanctions should not be imposed for my expression of my belief and opinion."

The first problem with this argument is that he did not, in the California and Arizona court filings express his concerns and belief that Magistrate Judge Johnston was "required to recuse himself as a matter of law due to his co-counsel relationship with Holland & Knight." What he said in those filings was that Magistrate Judge Johnston was a supervising attorney at Holland & Knight at the same time Holland & Knight was representing defendants in Attorney Shalaby's personal action. His actual statements were false.

Further, Attorney Shalaby is incorrect that serving as co-counsel in unrelated matters with an attorney from Holland & Knight required Magistrate Judge Johnston's disqualification. 28 U.S.C. § 455(b)(2) "mandates recusal only where a member of the judge's former law firm worked on the matter while the judge was with the firm." Hoang v. Ummel, 24 Fed. Appx. 613, 617 (7th Cir. 2001); see also, Sphere Drake Ins. Ltd. v. All American Life Ins. Co., 302 F.3d 617, 621 (7th Cir. 2002) ("no partner of Mayer Brown served 'during such association' (that is, while Jacks also was a partner) as a lawyer in this dispute"); Culver v. City of Milwaukee, 277 F.3d

---

[9] The issue of serving as co-counsel with Attorney Siegel after Magistrate Judge Johnston's departure from Holland & Knight was not raised in the written motions [208] [213] to disqualify filed by Attorney Shalaby. However, Attorney Shalaby orally raised a concern about Attorney Siegel during the November 14, 2018 hearing. At the hearing he stated: "But there were some concerns I had, pretty significant concerns, that left me with a very strong fear and concern, that one of them may be some of the cases you handled with Mr. Jack Siegel, a well-respected attorney, who is now gone, and you continued to work with him at the Holland & Knight firm, I think all the way until 2012, on various matters. So I think you have an affinity for Mr. Siegel and for the Holland & Knight firm." [236, p.6]

908, 912 (7th Cir. 2002) ("the firm did not represent the union while the judge was a member of the firm"); Old Republic Nat'l Title Ins. Co. v. Warner, No. 12 CV 91, 2013 WL 2403597, *3 (N.D. W. Va. May 31, 2013) ("Section 455(b)(2), in other words, mandates recusal . . . (2) where the judge's former law partner, during the judge's tenure with the firm, served as a lawyer concerning the matter in controversy."); Faulkner v. National Geographic Soc'y, 296 F. Supp.2d 488, 490-91 (S.D. N.Y. 2003) (Section 455(b)(2) requires recusal "if and only if, (1) the judge, while in private practice, or another attorney in the same firm, (2) during the judge's tenure with the firm, (3) served as a lawyer concerning the matter.") In its research, the court found no case in which the language of Section 455(b)(2) was construed to apply to a judge who was a former member of a law firm and, who, after withdrawing from that firm, had appeared as co-counsel with a member of that firm in an unrelated matter at the same time that a different member of that firm was serving as a lawyer in the matter in controversy. Attorney Shalaby did not cite any cases in support of his position on this matter.

Attorney Shalaby's response then raises an additional reason, beyond the mandatory 28 U.S.C. § 455(b)(2) disqualification arguments, why he believes Magistrate Judge Johnston should have disqualified himself. Attorney Shalaby raises:

> "Magistrate Judge Johnston's inexplicable refusal to allow Plaintiff to take the deposition of perhaps the most important witness in this matter, Dr. Thomas Eagar of MIT. Magistrate Judge Johnston characterized the evidence Plaintiff sought to obtain from Dr. Eagar as 'awesome,' and yet stated from the bench, quite angrily, that he would not allow Plaintiff to take Dr. Eagar's deposition, without providing any reason. This is detailed on dkt. 325 filed 4/6/18.[10] Based on the matters as explained on dkt. 325, I believe Hon. Magistrate Judge Johnston

---

[10] Docket # 325 is an objection filed by Attorney Shalaby on behalf of plaintiff to an oral ruling made by Magistrate Judge Johnston during a hearing [323] on April 5, 2018 wherein Magistrate Judge Johnston denied plaintiff's request to depose Dr. Thomas Eagar. This objection was later withdrawn [380] by Attorney Shalaby.

has an actual prejudice, favoring the defense, because of his recognition that the Dr. Eagar evidence would be 'awesome' and his refusal to allow the deposition to take place, without expressing any basis for his decision. There is no privilege of any kind to preclude the taking of the deposition, and there is no reason based in fact or law of which I am aware which would support Magistrate Judge's decision."

The case history dealing with the question of plaintiff deposing Dr. Eagar is as follows:

On August 17, 2017, Magistrate Judge Johnston conducted a hearing [130] on plaintiff's motion [91] to compel the deposition of Dr. Eagar, the motion [115] of Dr. Eagar to quash the subpoena for his deposition, and defendants' motion [103] for a protective order. Thereafter, Magistrate Judge Johnston entered an order [122] granting Dr. Eagar's motion to quash, denying plaintiff's motion to compel, and denying as moot defendants' motion for a protective order. Magistrate Judge Johnston stated on the record during the hearing:

"[I]f they are not going to call him as a witness at this point, and they haven't identified him under 26(a)(1), they are not going to use him at this point, and it can't be a – a party can't hijack a person to have them provide expert testimony for free, right? That would seem awfully unfair to that person.

If your co-counsel[11] is trying to get expert opinions out of Dr. Eagar, there is a way to do it. You hire him. You pay him. You don't sneak a subpoena with your $50 witness fee and start rifling a bunch of opinion questions at him, and that's unfair to the other side because they don't know what the opinions are going to be for this particular case." [130, p. 12]

At the conclusion of the hearing, Magistrate Judge Johnston stated:

"I will enter an order on today's motion, but to be clear, Dr. Eagar's deposition is not occurring on the 22nd, and until he is identified as a witness in this case, he is not going to be deposed. Having said that, there is case law that prevents a party from just slapping a witness on their own 26(a) so that they can depose him. So we won't have that issue." [130, p.20]

---

[11] Plaintiff was represented at the hearing by local counsel, Attorney Whitham. The "co-counsel" referred to is Attorney Shalaby, who did not participate in the hearing.

After the order [122] was entered, Attorney Shalaby filed a document [126] entitled

"Notice of Defense Misinformation" in which he noted Dr. Eagar had been listed on plaintiff's

initial Rule 26(a)(1) disclosure as an individual with discoverable information and that, in

conversations Attorney Shalaby had with Dr. Eagar, Dr. Eagar had told Attorney Shalaby that Dr.

Eagar deemed it his civic duty to appear and testify at his deposition and that Dr. Eagar reported

having told defense counsel he would not be charging for his testimony. Magistrate Judge

Johnston treated this document as a motion to reconsider the prior order [122] and, on August 28,

2017, entered an order [129] denying the motion to reconsider. No objection under Fed. R. Civ.

P. 72(a) was filed either to the initial order [122] or to the order [129] denying reconsideration.

The issue of deposing Dr. Eagar was again raised at a hearing [246] before Magistrate

Judge Johnston on January 4, 2018. During that hearing, the defendants stipulated they would not

call Dr. Eagar as a witness in this case. [246, p. 32].

During the hearing Magistrate Judge Johnston stated:

"[L]et's bring the focus to what we have before me, is you are seeking to depose a
witness [Dr. Eagar] who has been a prior retained expert by your opponent and get
– I understand, I have heard your argument, but in my mind, there is no doubt
what you are trying to do is to get that witness, who has been a witness for the
Defendant multiple times, to give you an opinion that's contrary. I get it. That
would be awesome evidence to get. It doesn't mean you get it though. If he
wants to be hired by you, he can be, but they are not calling him as a witness."
[246, pp. 45-46]

At the conclusion of the hearing Magistrate Judge Johnston stated on the record:

"I have said repeatedly that I would not allow a deposition of Dr. Eagar regarding
the report in the Marmont case. However, he has raised a specific issue that Dr.
Eagar – Mr. Shalaby claims that Dr. Eagar notified Worthington that your product
was defective and that they were on notice.

I am not allowing an oral deposition on that issue. I am considering written deposition questions under Rule 31, but I want to see the questions, the cross, the re-cross, and the redirect, all under Rule 31, before I even allow it." [246, pp. 49-50]

The following exchange then occurred:

"MR. SHALABY: Okay. So thank you for making the clarification, your Honor. I am going to make a motion requesting a videotaped oral deposition, just so we will have it properly in the record.

THE COURT: That's fine. Go ahead and file your motion. Bring it in. I will be here." [246, p. 50]

Magistrate Judge Johnston then entered a written order [245] on January 4, 2018. In the order he stated:

"As discussed in open court, the Court will not allow plaintiff to depose Dr. Thomas Eagar regarding his expert report in Marmont v. Bernzomatic (2:16-CV-00848). If plaintiff wishes to proceed with a written deposition under Rule 31(a)(5) as to whether Dr. Eagar notified defendants of his opinion that the product at issue in this case was defective, plaintiff shall provide the Court's operations specialist with a list of 10 questions relating to this subject matter by 1/11/2018. Defendants may submit responses/cross-questions by 1/16/2018. The Court will determine whether it will allow the questions to be served on Dr. Eagar."

No objection under Fed. R. Civ. P. 72(a) was filed to this order [245]. Attorney Shalaby chose not to submit proposed questions for a possible Rule 31 written deposition.

During a hearing [323] on March 29, 2018 the following exchange occurred:

"MR. SHALABY: I need Dr. Eagar's videotaped deposition without restrictions. I do not need ten questions. All that will do - -

THE COURT: I already said you can't do that, so why am I revisiting it for the third time.

MR. SHALABY: I honestly don't believe you have a written order that says that.

THE COURT: You can't depose Dr. Eagar." [323, p. 14]

On behalf of plaintiff, Attorney Shalaby filed an objection [324] [325] pursuant to Fed. R.

72(a) to Magistrate Judge Johnston's ruling during the course of this hearing that plaintiff would not be allowed to depose Dr. Eagar. On August 23, 2018, plaintiff, through Attorney Shalaby, withdrew [380] this objection.

It is apparent from the foregoing that Magistrate Judge Johnston did not deny plaintiff's request to depose Dr. Eagar "without providing any reason." At the March 29, 2018 hearing, he stated: "I already said you can't do that, so why am I revisiting it for the third time." Previously, at the August 17, 2017 hearing, he stated he would not allow the deposition because Dr. Eagar had not been identified as a witness. At the January 4, 2018 hearing, after defendants stipulated they were not going to call Dr. Eagar as a witness, Magistrate Judge Johnston again declined to allow Dr. Eagar to be deposed because defendants were not calling him as a witness. He also, said he was considering allowing a deposition by written questions under Fed. R. Civ. P. 31 on the limited issue of whether Dr. Eagar had notified defendants of his opinion that the product at issue in this case was defective. He then gave plaintiff time to submit ten proposed deposition questions to the court. Attorney Shalaby chose not to submit any proposed deposition questions.

As this review of the record demonstrates, Attorney Shalaby's assertion in his response [384] to the 2018 Show Cause Order that Magistrate Judge Johnston did not provide any reason for precluding plaintiff from taking Dr. Eagar's deposition is false. The reason (that defendants had not identified Dr. Eagar as a defense witness and stipulated that they would not call him as a defense witness) was clearly stated on the record in the August 17, 2017 hearing [130] and the January 4, 2018 hearing [246]. At the March 29, 2018 hearing, the stated reason was "I already said you can't do that, so why am I revisiting it for the third time."

If Attorney Shalaby believed the rulings were wrong, he had the opportunity to file an

objection to each ruling pursuant to Fed. R. Civ. P. 72(a). He did not avail himself of this opportunity. He did not file Rule 72(a) objections to the August 17, 2017 or January 4, 2018 rulings. While he did file an objection to the March 29, 2018 ruling [323], he subsequently withdrew [380] that objection. Attorney Shalaby's statement in his response [384] that Magistrate Judge Johnston precluded him from taking Dr. Eagar's deposition "without providing any reason" is false.

Attorney Shalaby also filed a supplemental response [386] setting forth additional reasons he believes Magistrate Judge Johnston should have disqualified himself. The supplemental response states:

> "Magistrate Judge Johnston served as co-counsel with the Holland & Knight firm during the time that the firm represented 'BernzOmatic' as a defendant in Shalaby v. Bernzomatic, et al., 07-cv-2107. His retention of the 'court-appointed expert' appears to be an active hand in the litigation, and appears unprecedented in a civil case. A cursory search on Westlaw shows that there are only 7 published decisions, in the entire nation, in which federal courts retained their own experts."

The supplemental response goes on to note that three of these cases were criminal cases, one was a bankruptcy case, and one was the case at bar. The supplemental response distinguishes the other two cases because in one "the parties jointly selected an expert and had the expert designated as the court expert to advise the court on disputed patent claim terms." Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 630 F. Supp. 2d 645 (E.D. Va. 2008). And, in the other, because "the Court retained various experts for advisement regarding several legal issues and to assist in data collecting, data collation, and administration of the numerous communications from and to class members." Grantham v. J.J. Mason Grp., 811 F. Supp. 1386 (E.D. Mo. 1993).

The supplemental response then states:

"It therefore appears that no Federal Court in the nation has ever retained its own expert witness so as to inject the Court into the litigation process. Instead, the six cases found on Westlaw demonstrate that court-appointed experts are appropriate in criminal cases, or by stipulation of the parties, or to assist the court itself such as to assist in data collection and administration of communications to class members."

The record reflects Magistrate Judge Johnston raised the possibility of appointing a court-appointed expert under Fed. R. Evid. 706 at the August 17, 2017 hearing. [130, pp. 8-10, 17] He asked each side to provide a list of five names of proposed experts. [122] At a hearing [157] on September 26, 2017, he stated "[n]one of you folks were able to match up on proposed experts, so I'm going to find my own. He is clearing conflicts now. . . . . . . If he clears conflicts then we are going with Mr. Adil, A-d-i-l, Khan, K-h-a-n." [157, p. 2] In an order [152] entered by Magistrate Judge Johnston on September 26, 2017, Adil Khan was appointed as a court-appointed expert under Rule 706. The order states: "Mr. Khan has confirmed that he has no conflict with the parties or their counsel. The clerk is directed to file a copy of the court's Rule 706 letter to Mr. Khan as well as his resume to the docket." The letter[12] [153] and resume [153-1] were so filed.

_____

[12]The text of the letter is as follows: Dear Mr. Khan:

As you know, I am appointing you as a Court-Appointed Expert for this case. In that capacity, your responsibility will be to provide your opinion regarding the cause of the alleged failure of the container. Pursuant to Federal Rule of Evidence 706, I am required to inform you of your duties. This letter serves that purpose.

You must advise the parties of any findings that you make.

1. You may be deposed by any party to this case.

2. You may be called to testify by the Court or any party; and

3. You may be cross-examined by any party, including the party that called you to testify.

No Rule 72(a) objection was filed to this order or the letter referenced therein and filed with it.

Rule 706 clearly allows the court to appoint an expert on its own initiative. The Advisory

Committee Notes to Rule 706 when proposed provide: "The inherent power of a trial judge to

appoint an expert of his own choosing is virtually unquestioned." The note cites <u>Scott v. Spanjer</u>

---

Yesterday, the parties had a status hearing with me. At the hearing, I provided the parties with your name so that they could assure themselves that you had no conflicts. I also informed them that under Federal Rule of Evidence 706, they still retained the right to hire their own expert witnesses. To that point, it seems the parties have already hired experts. The parties wanted their experts to have input on the protocols for testing of the container. That is a reasonable request and I will certainly allow the experts (not counsel) to provide their views on the protocols. However, having said that, you retain the ultimate decision as to what protocols should be used. In determining the protocols, I will set a telephonic status at a mutually convenient time so that we can obtain your general views on the protocols. After that, I will allow the parties' experts (again, experts - not counsel) to provide you with written suggestions as to the protocols. After you receive the written suggestions regarding the protocols, the parties' experts and you can have a conversation to discuss the suggestions. That conversation will be transcribed by a court reporter. The cost for the court reporter and the transcription will be shared equally by the parties. Following that conversation, you can determine the precise protocols that you will use. After that, you can test the container. Following your testing, you will prepare your report regarding your findings and provide it to me, and I will provide it to the parties. Except for the written submissions and the conversation about the protocols, there should be no communication between you and the experts, and certainly none with counsel, absent prior Court approval.

Additionally, as I mentioned to the parties, you will be compensated with the parties sharing the cost evenly (50% plaintiff / 50% defendants). As to any deposition you may be required to provide, the party that takes your deposition will be required to pay your standard reasonable rate for that deposition.

If at any time you become uncertain as to your responsibilities, please let me know and we will have a telephonic status call on the record with you and counsel to clarify those responsibilities.

I look forward to you assisting the Court and the parties in reaching an accurate determination of what occurred with the container and why.

At your earliest convenience, please let me know a Tuesday or Thursday that you are available for a telephonic status to discuss this case with counsel and to obtain your general views on the protocols.

Thank you very much.

Sincerely,

Iain D. Johnston
U.S. Magistrate Judge

Bros., Inc., 298 F.2d 928 (2nd Cir. 1962) which upheld the court's appointment of a medical

expert in a tort case. Nothing in the rule suggests its use is to be limited to certain types of cases.

The Advisory Committee Note states: "in the federal practice, a comprehensive scheme for court

appointed experts was initiated with the adoption of Rule 28 of the Federal Rules of Criminal

Procedure in 1946." It further states, in reference to Rule 706, that "[t]he present rule expands

the practice to include civil cases." Magistrate Judge Johnston acted within his authority to

appoint an expert and Attorney Shalaby did not file a Rule 72(a) objection to that appointment.

Other matters raised by the supplemental response include the assertion that Magistrate

Judge Johnston failed to file all of the correspondences he had with the court-appointed expert.

Attorney Shalaby states in the supplemental response:

> "Magistrate Judge Johnston advised the parties of his intent for full transparency
> with regard to the Court expert. Mr. Shalaby requested that the Court forward
> copies of the correspondences between Magistrate Judge Johnston and Mr. Khan,
> or that they be posted on the Pacer system. The request was not responded-two
> (sic). On April 24, 2018 Mr. Shalaby repeated the request as a motion [dkt. 334],
> in which he requested that Magistrate Judge Johnston order Mr. Khan to turn
> over all photographs, micrographs, images, notes, correspondences, and

materials.[13] Mr. Khan had already been paid his $15,909.01, therefore had no reason to withhold the materials. The Court assured 'transparency', therefore there was no reason for the Court not to post all correspondences with Mr. Khan on Pacer, or to provide them to the parties. The Court did not even object. However, when the Court issued its order, it excluded mention of the correspondences, and directed Mr. Khan to produce the materials on the minute entry which he has no access to, shown at dkt. 362:

> MINUTE entry before the Honorable Iain D. Johnston: Status and motion hearing held 5/15/2018. The portion of the plaintiff's motion 334 to obtain Mr. Khan's work product is granted. Mr. Khan is directed to provide a copy of any photographs and other work product to the parties.[14]

Mr. Khan is not on Pacer and does not receive minute entries. The Court did not post any letter or notice to Mr. Khan to produce the photographs and materials

---

[13] The motion, in relevant part, stated as follows: "Plaintiff respectfully moves for an order directing Mr. Khan to serve all photographs and other work product he has in relation to his Court-ordered assignment as the court-appointed expert. Counsel is informed that Mr. Khan took various photographs and may have micrograph and/or other images, notes, correspondences, and materials."

[14] This is a partial quotation of Magistrate Judge Johnston's order [362] of May 15, 2018. The order in its entirety is as follows:
"MINUTE entry before the Honorable Iain D. Johnston: Status and motion hearings held 5/15/2018. The portion of the plaintiff's motion 334 to obtain Mr. Khan's work product is granted. Mr. Khan is directed to provide a copy of any photographs or other work product to the parties, which the parties shall maintain under the provisions of the confidentiality order. The clerk is directed to forward a copy of this order to Mr. Khan. The portion of the plaintiff's motion to terminate the requirement that local counsel also sign all filings 334 is denied to help facilitate local counsel's obligation under Rule 11 to review all filings for soundness. In light of the stay, see Dkt. 290, and the objections pending before Judge Reinhard, see Dkts. 324, 325, 338, and 343, the Court strikes all pending motions 295, 306, 336, and 359. Given the history of this case, the quantity of filings, the impact on the other cases before this Court, and under its inherent powers to manage and control its docket, the Court limits the parties to filing one motion per week, with each motion addressing a single, discrete dispute. Each motion must be set for presentment, see Local Rule 5.3(b), must provide three business days' notice, and counsel must appear in person, see Standing Order on General Status and Motion Practice ("Counsel or a party must appear in person for the presentment of a motion…. Motions must be filed three (3) business days before presentment... "). However, the Court anticipates no motions until after it lifts the stay. The Court will decide how this case proceeds after Judge Reinhard rules on the pending objections. (yxp,) (Entered: 05/15/2018)"

which cost the parties $15,909.01. It does not appear he sent any letter to Mr. Khan at all directing him to turn over the requested materials. Only some correspondences between the Court and Mr. Khan were posted. However, it appears that other correspondences were not posted. It appears that the correspondences letter terminating Mr. Khan, if any, was not posted. There is reason to believe that there are other correspondences between Mr. Khan and the Court which were not posted, and which were not otherwise given to the parties. The Court has not told the parties that there are no correspondences between the Court and Mr. Khan which were not given to the parties and which were not otherwise posted on Pacer. The absence of a letter or order directed to Mr. Khan and directing him to turn over the materials specified by the Court's minute entry further concerns Plaintiff. In fact it appears to concern the defendants as well, based on an interaction between Mr. Shalaby and Mr. Granskog at the Minnesota test facility on September 4, 2018 (the same day the OSC was issued)."(Emphasis added).

As the portion of the order [362] underlined in the above footnote highlights, Attorney Shalaby's supplemental response [386] omits the portion of the order which states: "The clerk is directed to forward a copy of this order to Mr. Khan." The docket contains an entry dated May 16. 2018, which states "MAILED Minute entry order #362 to Adil Khan via email." Attorney Shalaby's statement in his supplemental response that "[t]he Court did not post any letter or notice to Mr. Khan to produce the photographs and materials which cost the parties $15,909.01" and his statement that there was no "order directed to Mr. Khan and directing him to turn over the materials specified by the Court's minute entry" are false. The order [362] clearly directed the clerk to "forward a copy of this order to Mr. Khan" and the docket entry on May 16, 2018 shows the clerk did so.

The supplemental response also references the absence of any letter terminating Mr. Khan but the record shows Mr. Khan's retention was terminated by order [262] dated February 5, 2018. On that same date a docket entry by the clerk was made stating: "Mailed Copy of Order #262 to Adil Khan by electronic mail."

28

The supplemental response also raises an appearance of impropriety in Magistrate Judge Johnston ordering plaintiff to pay 50% of Mr. Khan's fee even though there are two defendants and only one plaintiff. It states: "The fact that Magistrate Judge Johnston ordered the bill split 50-50, instead of 1/3 each, further creates the 'appearance' of 'impropriety,' particularly when viewed with the totality of circumstances described above, would likely lead the average person to believe that Magistrate Judge Johnston may be prejudiced by favoring the defendants and perhaps creating obstacles for the plaintiff."

As noted above, no Rule 72(a) objection was filed to the order [152] appointing Mr. Khan or the letter [153] referenced therein and filed with it which clearly set out the 50% plaintiff-50% defendants split for Mr. Khan's fees. Rule 706 makes a court-appointed experts compensation in a civil case payable "by the parties in the proportion and at the time that the court directs – and the compensation is then charged like other costs.[15]" Fed. R. Evid. 706(c)(2).

Attorney Shalaby also states in the supplemental response that "effectively Magistrate Judge Johnston has already 'sanctioned' both the plaintiff as well as his counsel by forcing them to pay $7,954.05 of the $15,909.01 bill referenced above. Magistrate Judge Johnston did not refer to his order directing payment as a 'sanction' but in effect the order operated as a sanction, because the Court imposed this involuntary payment of $7,954.05 for an expert the Court hired, then fired, without benefit to any party. Plaintiff and Mr. Shalaby are sharing costs in this action, and thus far Mr. Shalaby has paid far more than 50% of all costs associated with this case. This includes the $15,909.01 bill of Mr. Khan." Attorney Shalaby offers this previously imposed

_____

[15] Amounts expended on a court-appointed expert are ultimately recoverable by the prevailing party as chargeable costs. 28 U.S.C. § 1920(6); Fed. R. Civ. P. 54(d)(1)

"sanction" as a reason he should not be otherwise sanctioned by the court. The concluding paragraph of the supplemental response states:

> "Returning now to the question of imposition of sanctions, the Court is urged to recognize and appreciate the fact that Magistrate Judge Johnston's imposition of $7,945.50 on Plaintiff to pay for Mr. Khan's bill operates very much as a sanction. It was a very large imposition of monies by the Court, in exchange for which there was no benefit at all. It can be deemed a sanction, paid for a crime which was never committed. The right and fair thing to do is issue an order to Mr. Khan to produce his product, and if there is no product, order him to return the money, the 50% paid by the plaintiff. This will be the case. Mr. Khan will have no product in exchange for the $15,909.01 paid to him, therefore ordering him to return 50% is the right and fair thing to do. Leaving the matter as it stands is not really right because it operates as a sanction imposed on the plaintiff and his counsel, and there is no basis for such a sanction or otherwise for such a financial imposition."

As noted above, the 50/50 split was amply set out at the outset of Mr. Khan's retention and no Rule 72(a) objection was made to the order setting up that arrangement. Plaintiff also did not file Rule 72(a) objection to the order directing the payment of 50% of Mr. Khan's invoice nor to the order Magistrate Judge Johnston entered denying reconsideration of that order.[16] The order requiring payment of 50% of Mr. Khan's invoice was simply the execution of the original arrangement to pay those fees set out by Magistrate Judge Johnston at the outset and as allowed by Rule 706(c)(2). It cannot be construed as a sanction on plaintiff or Attorney Shalaby.

The supplemental response also addresses several other actions taken by Magistrate Judge Johnston which it asserts raise the appearance of impropriety. These actions include issuing a rule to show cause to Attorney Shalaby on October 18, 2017 concerning information turned over to the court-appointed expert and refusing to allow the turnover to the court-appointed expert of the defendant's own description of the torch's fracture groove and its

---

[16] See the discussion in this court's order [294] of March 13, 2018.

intended purpose. The supplemental response states concerning this information:

> "Magistrate Judge Johnston was made aware that if the above information [the defendant's description of the fracture groove and its intended purpose] were to be given to the Court-appointed expert, the expert would literally have no choice but to reach the conclusion that the cylinder that injured Mr. Bailey was defective. [record citation omitted] Nevertheless, Magistrate Johnston prohibited providing this information to the expert, and stated clearly on the record, 'at this time.' He repeatedly stated that he would not allow the expert to receive Plaintiff's fracture groove submissions 'at this time.' The question is obviously 'why' Magistrate Judge Johnston filtered the most important information the expert needed to determine the product defect matter. Disturbingly, Mr. Shalaby can only conclude that Magistrate Judge Johnston filtered this information for no reason other than the fact that the defendants asked him to prevent Mr. Shalaby from giving it to the expert, knowing that the fracture groove description alone would go very far towards determination that the fuel cylinders suffer design defects."

While Attorney Shalaby states he "can only conclude that Magistrate Judge Johnston filtered this information for no reason other than the fact that the defendants asked him to prevent Mr. Shalaby from giving it to the expert, knowing that the fracture groove description alone would go very far towards determination that the fuel cylinders suffer design defects," the record shows the court-appointed expert stated at the hearing on October 17, 2017, that he did not need the information "at this time". The following discussion occurred at the October 17. 2017 hearing:

> "MR. SHALABY: Okay. Can we be specific as to specifications? I'm referring to the manufacturing specifications for the amount of force the cylinders are designed to withstand as compared to and differentiated from the manufacturing specification for the measure of force required to break the fracture groove on the torch handle.
>
> THE COURT: Okay. Well, hold on a second. That's a very different question than you asked Mr. Kahn. Mr. Kahn, did you hear all that?
>
> MR. KAHN: I heard that, yes.

THE COURT: Is that something you need now?

MR. KAHN: I don't need it now, but I will most likely need it once I take a look at all the components that are involved in this investigation.

THE COURT: Okay. All right. So, Mr. Ergo, Mr. Granskog, Mr. Kahn is going to need it to make his opinion, all right? So that is going to have to be provided to him sooner or later, okay?

MR. ERGO: Well, your Honor, I don't think there is a manufacturing specification for the amount of force.

THE COURT: Well, if there isn't, if you don't have it, you don't have it, right?

MR. ERGO: Okay.

THE COURT: But if Mr. Kahn can't make an opinion because you don't have it, that is going to cause a problem.

MR. ERGO: I understand that, but, geez, when we are looking at -- what we are going to be establishing here is was this metal brittle or was it ductile. That's going to be one of the baselines. And I don't think those type of specs are necessary, but I will --

THE COURT: I'm not limiting -- I'm not limiting Mr. Kahn to any aspect. I have no idea what he is going to see when he looks at this thing. I have no idea what he is going to find when he tests it. That's why he is coming in here. He has got a free run, all right? So let's see what it is. And if he needs information that is necessary for his opinion, if it exists, it has got to be provided to him. That's all I'm saying.

MR. ERGO: All right. Whatever data he requests, that he says he needs, we will cooperate fully.

THE COURT: Okay. I assumed you would. Okay. [176, pp. 20-22]

It is evident from this exchanges at the October 17, 2017 hearing that if, Mr. Khan, the court-appointed expert determined he needed the "the manufacturing specifications for the amount of force the cylinders are designed to withstand as compared to and differentiated from the manufacturing specification for the measure of force required to break the fracture groove on the torch handle," that Magistrate Judge Johnston was going to require defendants to provide that information to Mr. Khan. It is also evident that Mr. Khan stated he did not "need it now" but would "most likely need it once I look at all the components that are involved in this investigation." Magistrate Judge Johnston made clear Mr. Khan would get the information if he requested it.

After this hearing, Magistrate Judge Johnston entered an order [160] which provided in part that "[c]ounsel shall provide the photographs and any manufacturing drawings for the cylinder and torch materials as discussed in open court."

At the conclusion of the hearing the following discussion occurred:

"MR. SHALABY: One last, very important question. At
this point in time, Mr. Kahn, do you need to have any facts as
to what was being done with the product before or at the time
of its failure or not yet?

MR. KAHN: I think it is kind of early right now. I
would like to take a look at it first. And I'm sure that kind
of information is going to be pertinent to what is done ultimately in the evaluation. So,
yes, I may ask for it, and I will probably get it after it, request it at the time that is
necessary once I have taken a good look at the components that are there. So I think it is
coming, but I don't think I need it right now.

THE COURT: But not now, not now. Just give Mr. Kahn
what we have talked about, okay?

MR. SHALABY: Okay. The directions were not to send
any text, only photographs?

THE COURT: Photographs, and then Mr. Ergo and
Mr. Granskog were going to send specs or a drawing, those type of things, but that's it, all right?

MR. SHALABY: Okay." [176, pp. 27-28]

On October 18, 2017, Magistrate Judge Johnston entered an order [161] in which he issued a rule to show cause why Attorney Shalaby should not be held in contempt for violating Magistrate Judge Johnston's order [160] of October 17, 2017, "to provide only photographs of the cylinder and torch at issue in this case" to Mr. Khan.

As just noted, at the October 17, 2017 hearing, Attorney Shalaby acknowledged and Magistrate Judge Johnston confirmed Attorney Shalaby was to send only photographs to Mr. Khan. However, in addition to photographs, he attached to his email to Mr. Khan "Defendant's document describing the torch handle safety fracture groove features at issue." [159 p.5] This attachment included the following text: "Fracture Groove > A designed in failure point in the torch, so that when the torch & cylinder are dropped, the fracture groove will fail prior to the cylinder center bushing failing. If the center bushing fails, then an extremely large 8 to 10 foot flame will erupt from the cylinder." [159 p. 11]

In his supplemental response [192] to Magistrate Judge Johnston's rule to show cause order [161], Attorney Shalaby stated the transcript of the October 17, 2017 hearing showed Magistrate Judge Johnston had erred. He cites the portion of the transcript (quoted above) which states:

THE COURT: I'm not limiting -- I'm not limiting
Mr. Kahn to any aspect. I have no idea what he is going to
see when he looks at this thing. I have no idea what he is
going to find when he tests it. That's why he is coming in

here. He has got a free run, all right? So let's see what it
is. And if he needs information that is necessary for his
opinion, if it exists, it has got to be provided to him.
That's all I'm saying.

MR. ERGO: All right. Whatever data he requests,
that he says he needs, we will cooperate fully.

THE COURT: Okay. I assumed you would. Okay.

Attorney Shalaby's supplemental response [192] to Magistrate Judge Johnston's order
[161] then states: "Mr. Khan needs the documents which this counsel has sent. In particular he
needs the document that describes the fracture groove feature, a document prepared by the
defendants and/or their affiliates, and which explains what a fracture groove feature is." [192,
p.3]

Again, as discussed above, a review of the record shows Magistrate Judge Johnston made
clear that Mr. Khan would get the fracture groove information if he requested it and that Mr.
Khan had stated: "I don't need it now, but I will most likely need it once I take a look at all the
components that are involved in this investigation." It was in this context that Magistrate Judge
Johnston limited the information to be provided by Attorney Shalaby to photographs of the
cylinder and torch at that time in his October 17, 2017 order [160]. From the transcript, it is clear
Mr. Khan was planning to inspect the product plaintiff had been using when he was injured and
determine after that what his next step would be.

Attorney Shalaby took it upon himself to send the information before Mr. Khan
determined if he wanted it and sent the information to Mr. Khan despite the fact the order limited
Attorney Shalaby to sending only photos and despite the fact Attorney Shalaby had
acknowledged at the October 17, 2017 hearing, and Magistrate Judge Johnston had confirmed at

that hearing, that only photographs were to be sent by Attorney Shalaby to Mr. Khan. It was this clear violation of the October 17, 2017 order that elicited the rule to show cause.[17]

Another action raised by the supplemental response to the 2018 Show Cause Order as creating an appearance of impropriety is set forth as follows:

> "Mr. Shalaby filed a motion for partial summary judgment for determination of liability as a matter of law nearly a year ago, on October 30, 2017 [dkt. 193-197]. In response, Magistrate Judge Johnston suggested to the defendants in open court, and on the record, that they file a 'Rule 56(d) declaration, so that he could take the motion off calendar. They did, and he took it off calendar, only for the motion to be followed by defendant's motion to revoke Mr. Shalaby's PHV admission. This action creates the appearance of impropriety, and is rather serious, because the MSJ could very well establish liability as a matter of law. Moreover, the expert fees of Mr. Khan would have been avoided as well."

No Rule 72(a) objection was filed to the order [201], entered November 2, 2017, entering and continuing plaintiff's motion for partial summary judgment.

To summarize, in the 2018 Show Cause Order the court ordered Attorney Shalaby to address: "[h]is repeated false statements that Magistrate Judge Johnston was employed by Holland & Knight at the time Holland & Knight attorneys were representing the defendants in Attorney Shalaby's personal litigation against them and that Magistrate Judge Johnston refused to disqualify himself in the current case though such disqualification was mandated by 28 U.S.C. § 455(b)(2) due to that employment." Attorney Shalaby responded by:

1) Acknowledging that he made the statements without reviewing the transcript of the hearing held on the matter and stating that had he "known that Judge Johnston left the HK firm two months before it substituted into my San Diego action, I would not have stated otherwise on the pleadings referenced by this Court";

---

[17] Magistrate Judge Johnston ultimately discharged [238] the rule to show cause.

2) Arguing that notwithstanding Magistrate Judge Johnston's employment with Holland & Knight having ended prior to one of its attorneys entering an appearance in Attorney Shalaby's personal suit, he was required to recuse himself under 28 U.S.C. § 455(b)(2) because, after leaving Holland & Knight, he served as co-counsel with a Holland & Knight attorney in unrelated cases. Attorney Shalaby cited no cases to support this position and the court found none. Rather, the court's research found that Section 455(b)(2) only requires recusal when a member of the judge's former law firm worked on the matter while the judge was still a member of the firm;

3) Arguing that Magistrate Judge Johnston was required to recuse himself for actual prejudice because he refused to allow plaintiff to depose Dr. Eagar and failed to give a reason for this ruling. However, the record in this case shows Attorney Shalaby's claim that Magistrate Judge Johnston did not give a reason for denying plaintiff Dr. Eagar's deposition is false. The record clearly shows Magistrate Judge Johnston stated his reason (Dr. Eagar had not been identified by defendants as an expert and defendants stated they would not call him) in open court;

4) Misrepresenting the content of an order [362] entered by Magistrate Judge Johnston on May 15, 2018, by omitting the portion of the order directing the clerk "to forward a copy of this order to Mr. Khan" and then stating that the "Court did not post any letter or notice to Mr. Khan to produce the photographs and materials" though the docket reflects that the clerk sent Mr. Khan the order directing Mr. Khan to turnover these materials;

5) Arguing Magistrate Judge Johnston improperly refused to allow the turnover of the fracture groove information and stating that "Mr. Shalaby can only conclude that Magistrate

Judge Johnston filtered this information for no reason other than the fact that the defendants asked him to prevent Mr. Shalaby from giving it to the expert" when the record shows the expert stated that he did not "need it now" and that Magistrate Judge Johnston would order defendants to provide that information to Mr. Khan if Mr. Khan determined that he needed it;

6) Arguing Magistrate Judge Johnston showed partiality to defendants when he named a court-appointed expert, ordered that expert's fees to be split 50/50 between plaintiff and defendants, and suggesting to defendants that they file a Rule 56(d) declaration in response to plaintiff's motion for partial summary judgment so he could take the motion off the calendar and then taking the motion off the calendar after defendants filed the declaration;

7) Arguing that the order directing plaintiff to pay 50% of Mr. Khan's submitted bill was in effect a "sanction" and requesting relief from that "sanction".

As the foregoing makes clear, the bulk of Attorney Shalaby's responses to the 2018 Show Cause Order's provision requiring him to address his false statements about Magistrate Judge Johnston's refusal to disqualify himself because of his employment at Holland & Knight have nothing to do with those false statements, but, instead, argue that Magistrate Judge Johnston should have disqualified himself for different reasons. In the course of making these additional arguments, Attorney Shalaby made several additional misrepresentations about Magistrate Judge Johnston's actions in this case as summarized in the foregoing paragraphs numbered 3), 4), and 5) and detailed more fully above.

On December 28, 2018, Attorney Shalaby filed a motion [401] (which included as an attachment a request for judicial notice [401-1]) seeking leave to file "supplemental documents in support of response of Andrew W. Shalaby to order to show cause dated 9/4/18" The proposed supplemental documents are included in Exhibit TR-1 (certain documents from a New York

State court case, <u>Tran v. Worthington</u> [401-2]) and Exhibit TR-2 (a draft motion, with accompanying memorandum of law, for Rule 11 sanctions [401-3].) Attorney Shalaby states he served the latter [401-3] on defendants pursuant to Fed. R. Civ. P. 11 (c)(2).[18] The docket sheet in this case does not show that the Rule 11 motion was ever filed.

In the motion [401] for leave to file supplemental documents, Attorney Shalaby again raises the argument that Magistrate Judge Johnston's order requiring plaintiff to pay one-half of the court-appointed experts fee was, in effect, a sanction. This argument was addressed above. In the motion [401] Attorney Shalaby also states the following under the heading "Conclusion":

"Mr. Shalaby respectfully impresses upon the Court that the overriding concern, by far, must be evaluation of Mr. Shalaby's work and tenacity in prosecution of this case thus far, the likelihood that Mr. Shalaby will be able to obtain and present evidence to secure a successful Plaintiff's verdict and use the verdict to obtain recall of these products, and whether removal of Mr. Shalaby and delays in these proceedings threaten to result in further injuries and deaths. In this regard Mr. Shalaby points out that he already filed a motion for partial summary judgment for determination of the defects and liability as a matter of law very early, on 10/30/17 (dkt. 193), which was 'stricken' by Hon. Judge Johnston. Perhaps the next motion, filed by defendants, was to remove Mr. Shalaby as counsel from this case, denial of which is now on appeal before the Honorable Judge Reinhard, and which has now resulted in a stay of about seven months or more, while another case has since appeared on the docket alleging another product failure and property damage of close to $5million (disclose earlier). Mr. Shalaby impresses upon the Court that the real reason the defendants have moved for the removal of Mr. Shalaby from this case is because of their awareness that Mr. Shalaby has the evidence necessary to show that they knew the subject products were defective and left them on the market to cause the deaths and severe burn injuries reported to this Court on the various pleadings. Mr. Shalaby therefore urges the Court to weigh the perceived impropriety of a PHV applicant's failure to disclose that prior to filing the PHV application, the applicant had been sanctioned and had also won an appeal reversing the sanctions award, versus the impropriety of a defendant moving to remove a plaintiff's counsel because the defendant is aware the targeted counsel has the evidence, knowledge, skill, and unfettered commitment and tenacity required to obtain a judgment establishing the product defects and early knowledge of same by defendants.

Mr. Shalaby finally brings to the Court's attention that the death of Mr. Tran, death of Ms.

---

[18] Fed. R. Civ. P. 11(c)(2) provides that a motion for sanction "must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

Marmont, burn injuries of Mr. Shadbolt in Canada, and many other severe burn injuries and possible deaths occurring after the year 2007, were almost certain to be avoided, had the Court in San Diego focused its attention on the details of the product defects before it, instead of taking seriously and taking as true the 'false facts' and contrived evidence of the defendants and their counsels targeting Mr. Shalaby personally, while these are now the same counsels in this action doing the same thing once again because of the reward of success a decade ago in the earlier action. The motivation of the defense counsels in moving to remove Mr. Shalaby as counsel is therefore the most important consideration. The admission of Worthington's counsels before this Court, whether PHV or as general admissions, should be carefully scrutinized with equal examination to determine if those counsels had actual knowledge that the subject products were defective and had caused severe burn injuries and deaths years before Mr. Bailey suffered burn injuries, and had misrepresented to the contrary and knowingly inserted grossly untrue defenses on the answer filed in this action, dkt. 74. In this regard, this counsel timely served the safe harbor notice of motion and motion for sanctions on Worthington's counsels on 2/11/17, immediately after it filed its answer, a copy of which is attached as Exhibit TR-2, and urges the Court now to turn to the substance of the product defects at issue, scrutiny of Worthington's answer (dkt. 74) along with scrutiny of the details of the product defects described on the MSJ (dkt. 193) and notice served upon Worthington on 2/11/17 with regard to same (TR-2). The Court's review of TR-1 will apprise the Court of the Tran death that could have been avoided but for the same careless denials of the product defects asserted on Worthington's answer. The other documents cited, if examined by the Court, will result in this Court's finding that the active concealment and denial by Worthington's California counsels cannot be disputed. Upon such a finding, no doubt this Court should revoke the PHV or general admissions of Worthington's own California counsels, Mr. Richard Ergo and Mr. Jason Granskog, and perhaps go as far as to set an OSC re sanctions, given that the denials of factual contentions here have resulted in severe burn injuries and actual deaths for which these counsels bear significant responsibility.

Mr. Shalaby asks that the Court be even-handed in its review of the grounds presented for revocation of Mr. Shalaby's PHV status. This even-handed [review] would be achieved by way of a balanced scrutiny into (1) whether a chain of events arising out of Mr. Shalaby's one-time failure to obtain a 'wet-signature' of a client back in 2015 amounts to an intentional misconduct, and one which warrants revocation, versus careful consideration of (2) whether an answer filed by the same counsels that were involved in the year 2007 'failed torch' proceedings contain intentional misrepresentations of facts and denials of existence of defects pertaining to products which the moving counsels had actual knowledge had already caused severe burn injuries and deaths long before filing this action. Clearly the wrongdoing of significance is the one which has already lead to deaths and severe injuries, and this is not something the Court should take lightly at all. The Court's scrutiny into the answer, MSJ, and matters set forth in the sanction safe harbor motion would be well-warranted under these circumstances."

The 2018 Show Cause Order directed Attorney Shalaby to show cause why he should not

have his PHV admission revoked or be otherwise sanctioned for certain conduct which arose after Magistrate Judge Johnston's entry of an order [333] on defendants' motion to revoke Attorney Shalaby's pro hac vice admission and the filing of objections thereto. The documents Attorney Shalaby seeks to file via this motion [401] do not go to the matters currently before the court. The unfiled Rule 11sanctions motion and the proceedings in the <u>Tran</u> case are not matters that relate to Attorney Shalaby's conduct after the entry of the order [333] on defendants' motion to revoke Attorney Shalaby's PHV admission. Accordingly, the court denies the motion [401] for leave to file these documents.

The motion also argues that defendants' motivation in moving to revoke Attorney Shalaby's PHV admission as well as defense counsels' own misconduct should be considered and balanced against the chain of events arising from Attorney Shalaby's "one-time failure to obtain a 'wet signature' of a client back in 2015." Attorney Shalaby asserts defendants sought his PHV revocation because defendants are aware he has "the evidence, knowledge, skill, and unfettered commitment and tenacity required to obtain a judgment establishing the products defects and early knowledge of same by defendants." But, again, the matters before the court are Attorney Shalaby's actions occurring after the order [333] on defendants' motion to revoke his PHV admission. The motion filed by defendants has been decided. That decision was not to revoke his PHV admission. The only sanction in that order was the requirement that the order be attached to any future PHV application in the Northern District of Illinois. Attorney Shalaby withdrew his objection to that order. Also, any asserted misconduct of defendants or defense counsel is not before the court nor would any such misconduct be a basis for excusing Attorney Shalaby's misconduct. Misconduct does not offset.

The 2018 Show Cause Order also ordered Attorney Shalaby to address the statement in his general bar application that he believed the State Bar of California only made an inquiry rather than conducted an investigation of him when previously in this case he referred to the state bar matter as an investigation and his request for judicial notice to the 9th Circuit and the documents attached thereto indicate the matter was an investigation.

The 2018 Show Cause Order set out various documents in which Attorney Shalaby had referred to the matter concerning him before the State Bar of California as an investigation and his statement made at a hearing before Magistrate Judge Johnston on March 29, 2018 in which he referred to the matter as an investigation. The 2018 Show Cause Order also noted an email from California State Bar Investigator Pomrantz in which she referred to the matter as the "ongoing State Bar Investigation No. 15-O-14848." Along with his response [384] to the 2018 Show Cause Order, Attorney Shalaby attached as an exhibit [384-3] a letter from State Bar of California Investigator Christian Chisnall dated August 22, 2018 concerning "Case Number: 15-O-14848 A State Bar Investigation." The letter states in relevant part: "The State Bar has completed the investigation of the allegations of professional misconduct and determined that this matter does not warrant further action. Therefore, the matter is closed." Despite his own statements and the communications from the investigators identifying the matter as an investigation, Attorney Shalaby now maintains the matter was not an investigation but rather an "inquiry", which, as noted in the 2018 Show Cause Order, is a less serious matter than an investigation.

In his response [384], Attorney Shalaby states:

"Although the State Bar letters use the word 'investigation,' and I myself used the word on pleadings, I was first called-upon to distinguish an 'investigation' from an 'inquiry' on the general bar application itself. The State Bar never alleged that

I violated any rules of ethics or rules of professional conduct. I spoke with Investigator Ms. Pomrantz directly, likely around June 6, 2016, the date shown on the request for judicial notice cited by this Court on its OSC, about two and a half months before I filed my PHV application (which was filed 8/28/16). I asked Ms. Pomrantz why the investigation letter did not cite any rule of professional conduct or ethics that had been violated. In response, Ms. Pomrantz told me the reason the investigation was initiated was simply pro forma, but in fact was more an inquiry than an investigation on this particular matter. She did not agree that I engaged in conduct which warranted imposition of sanctions or a state bar investigation. I am fairly certain that she told me that the matter would 'continue as an inquiry' until the appeal to the Ninth Circuit became final. I am not clear whether that means the matter began as an 'investigation' and then turned into an 'inquiry' after I won my appeal in February 2016, or if it was being treated as an inquiry all along. However, whether characterized as an 'investigation' in form and substance the point is that the Bar determined that the matter did not warrant any disciplinary action of any kind and closed the case.

My statement [on] the general bar admission form is that the State Bar 'investigation' was reasonably based on information provided to me by Ms. Pomrantz and all of the circumstances surrounding the investigation itself. An investigation typically includes a disclosure by the Bar of the Rules of Professional Conduct which were allegedly violated, and the charges of those violations, and in this instance that never happened. Because the State Bar never told me that I had violated any rules of professional conduct or ethics, and because of Ms. Pomrantz' explanation above, it remains my belief that even though the letters used the word 'investigation,' it was substantively an inquiry."

The letter [384-3] from Investigator Chisnall seems to confirm that the matter before the State Bar of California was an investigation not an inquiry. The letter identifies the matter as "A State Bar Investigation" and states that the "State Bar has completed the investigation of the allegations of professional misconduct and determined that this matter does not warrant further action." It seems unlikely State Bar investigators would have consistently referred to the matter in written correspondence as an investigation if the matter was, in fact, an inquiry. However, the court will not consider the issue of Attorney Shalaby's statement on his general bar application characterizing the State Bar of California matter as an inquiry rather than an investigation in the court's determination whether to revoke Attorney Shalaby's PHV admission. The court will

leave considerations related to his general bar application to the executive committee's consideration of that application.

A "federal court has the power to control admission to its bar and to discipline attorneys who appear before it. While this power ought to be exercised with great caution, it is nevertheless incidental to all Courts." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quotation marks and citations omitted). The revocation of an attorney's pro hac vice status falls within this inherent authority of the court. Lasar v. Ford Motor Co., 399 F.3d 1101, 1118 (9th Cir. 2005); see also, In re Rimsat, Ltd., 229 B.R. 914, 922 (Bankr. N.D. Ind. 1998) ("revocation of an attorney's pro hac vice admission is an available sanction in response to counsel's misconduct"). False statements to the court are a sound basis for revoking an attorney's pro hac vice admission, Ryan v. Astra Tech, Inc., 772 F.3d 50, 63 (1st Cir. 2014) ("[a]nyone who thinks it important that lawyers not lie to judges would be surprised if the court had done otherwise.") The "whole of abusive action is greater than the sum of the parts of which it is made." Fuery v. City of Chicago, 900 F.3d 450, 454 (7th Cir. 2018). "[T]hese incremental abuses chip away at the fair administration of justice and frustrate a trial judge's faith that she can rely upon the lawyers before her—officers of the court—to set forth a fair and accurate presentation of the facts and law. And for this reason we leave the evaluation of such abuse to the discretion of district courts which must manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. (quotation marks and citations omitted).

Attorney Shalaby has misrepresented to this court the content of Judge Efremsky's May 8th Order. He made the misrepresentation in a request for judicial notice [346] as discussed in the 2018 Show Cause Order. He also, as discussed above, misrepresented the contents of the May 8th Order in his response [384] to the 2018 Show Cause Order.

44

Attorney Shalaby misrepresented to this court that Magistrate Judge Johnston had refused to allow the deposition of Dr. Eagar without expressing any basis for the denial even though the record shows the reason was clearly stated more than once. Attorney Shalaby misrepresented the content of Magistrate Judge Johnston's order [362] relating to the turnover by Mr. Khan of photographs and other work product by omitting the portion of the order directing the clerk to forward a copy of the order to Mr. Khan and not disclosing the clerk's docket entry that the order had been sent to Mr. Khan. Attorney Shalaby misrepresented to this court Magistrate Judge Johnston's action concerning the turnover of the fracture groove information where the record showed Mr. Khan stated he did not need the information at that time but probably would need it in the future and that Magistrate Judge Johnston would require the turnover if Mr. Khan determined he needed it. Attorney Shalaby did not file, on behalf of the plaintiff, any Rule 72(a) objections to any of these rulings by Magistrate Judge Johnston except the denial of plaintiff's third request to depose Dr. Eagar and that objection was subsequently withdrawn.

Attorney Shalaby misrepresented to two other district courts that Magistrate Judge Johnston was employed by Holland & Knight at the time Holland & Knight represented defendants in Attorney Shalaby's personal action against defendants even though the record clearly showed Magistrate Judge Johnston advised Attorney Shalaby that he was no longer employed at Holland & Knight when one of its attorneys entered an appearance for defendants in Attorney Shalaby's personal case. Attorney Shalaby concedes he made these false statements without obtaining and reviewing a transcript of the proceedings in which he was advised that Magistrate Judge Johnston's employment had ceased prior to the Holland & Knight attorneys appearance in Attorney Shalaby's personal case.

In ruling [333] on defendants' motion to revoke Attorney Shalaby's PHV admission,

45

Magistrate Judge Johnston found Attorney Shalaby was not truthful in his PHV application because he did not disclose the sanctions imposed by Judge Efremsky and the Prefiling Order imposed by Judge Battaglia.[19]  Magistrate Judge Johnston concluded, however, that the "misrepresentations alone do not justify revoking his pro hac vice status."  Attorney Shalaby initially objected [338] to the portion of the ruling requiring him to attach a copy of the ruling [333] to any future PHV applications in the Northern District of Illinois but later withdrew [379] [380] his objection to this ruling.[20]  However, because defendants also objected to the ruling, this court, in the 2018 Show Cause Order, reviewed Magistrate Judge Johnston's findings and determined that the Prefiling Order and Judge Efremsky's sanctions (though not the fee disgorgement ordered per section 329(b)(1) of the bankruptcy code) were required to be disclosed by Attorney Shalaby in his PHV application.  Thus, he answered falsely when he answered "No" rather than "Yes" to the question "has the applicant ever been: censured, suspended, disbarred, or otherwise disciplined by any court?"

In the order [333], Magistrate Judge Johnston also expressed "some concern with Mr. Shalaby's conduct based on the history of the instant case.  The Court has expressed these concerns in numerous minute entries and court hearings throughout this case."  The order also noted concerns raised by Judge Battaglia and Judge Tuchi (the judge in Peralta discussed above) concerning Attorney Shalaby's conduct in those cases.

Rather than revoking Attorney Shalaby's PHV admission, Magistrate Judge Johnston imposed a lesser sanction, attachment of the order [333] to any future PHV applications filed in this district.  Magistrate Judge Johnston stated "that judges in the Northern District of Illinois

---

[19] United States District Court for the Southern District of California, No. 11cv68, Dkt # 66, July 27, 2012.
[20] "A party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).

presented with a motion by Mr. Shalaby to appear pro hac vice should be forewarned of this history when making their determination. Each judge should be allowed to make his or her own determination on whether to grant or deny pro hac vice status, but should do so after being fully informed of Mr. Shalaby's actions in this case and his history as detailed in this Order."

Since the entry of this order [333], Attorney Shalaby, as discussed above, has made additional false statements to this court and to other courts. The sanction imposed by Magistrate Judge Johnston has been ineffective in inducing Attorney Shalaby to be truthful in his representations to this court and to other courts. As detailed above, Attorney Shalaby has misrepresented the content of court orders and misrepresented facts appearing in the record. Attorney Shalaby cannot be trusted to accurately present the facts and law in this case. Therefore, Attorney Shalaby's pro hac vice admission in this case is revoked.

For the foregoing reasons, defendants' motion [368] to file a supplemental exhibit is denied. Attorney Shalaby's motion [365] to file a surreply is granted and the surreply [365-1] is deemed filed. Attorney Shalaby's motion [387] requesting confirmation that the requirement for local counsel for plaintiff to sign all filings made on behalf of plaintiff does not apply to documents filed concerning Attorney Shalaby's PHV admission is granted. Attorney Shalaby's motion [401] for leave to file supplemental documents and a related request to take judicial notice is denied. Attorney Shalaby's pro hac vice admission in this case is revoked. Defendants' objection [343] to Magistrate Judge Johnston's order [333] is denied as moot.

Dealing with Attorney Shalaby's voluminous filings and his string of misrepresentations in them has consumed an excessive amount of the court's time. Plaintiff continues to be represented by Attorney David Chen and local counsel Attorney John Nelson. The court trusts they will serve the plaintiff's interest and present his case effectively. The court requests

47

Magistrate Judge Johnston schedule a status conference with attorneys Chen and Nelson and

defense counsel as soon as possible.


Date: 2/01/2019                    ENTER:


_Philip G. Reinhard_
United States District Court Judge


Electronic Notices. (LC)